IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SUMMER CUMMINGS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action, Case No. 3:10-CV-0905 |
| | ) | Judge Trauger |
| PRESCOTECH INDUSTRIES, INC. | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

## ~~PROPOSED~~ JOINT INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01 (d), and as evidenced by the signatures of counsel below, the parties submit the following proposed initial case management report for the initial case management conference to be held on December 20, 2010 at 11:30 pm.

### I. Jurisdiction and Venue

This Court has jurisdiction of Plaintiff's claim pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different states or subjects of a foreign state.

Plaintiff alleges that venue is proper for this action pursuant to 28 U.S.C. § 1391(a) in that the Plaintiff is a resident and citizen of Murfreesboro, Rutherford County, Tennessee. The Defendant is a Kentucky Corporation; however, it is authorized to operate within the State of Tennessee with its Tennessee Division of business located at 1124 Haley road, Murfreesboro, Rutherford County, Tennessee; a substantial portion of the acts and events giving rise to this action occurred in Rutherford County, Tennessee, and the damage being suffered due to the

Defendant's alleged wrongful actions is being suffered in Rutherford County, Tennessee, within this judicial district.

## II. Parties' Theories of the Case

### A. <u>Plaintiff Summer Cummings</u>

The Plaintiff was hired as a full-time, permanent employee on January 14, 2008, to work as a machine operator. She had begun her employment with Defendant as a temporary employee in October 2007 and was subjected to repeated sexual harassment by her Supervisor, Bob Phelps, in December 2007 and January 2008.

On January 17, 2008, she informed the Plant Manager, Dennis (Last Name Unknown), about the sexual harassment she was subjected to by her Supervisor. Specifically, she complained about sexual comments made to her which included comments regarding her sexual relations with her boyfriend, her Supervisor's stated desires to have sex, his desire to use the bathroom with Plaintiff in a sexual manner, his descriptions of having a blanket and pillow in his SUV so that he could have sex, and his desire to have Plaintiff join him in his SUV to have sex. Mr. Phelps made these and similar comments to Plaintiff on a daily basis.

As a result of Plaintiff's complaints, Defendant assigned its Human Resources Director, Rita Dangremond, from its corporate office in Kentucky to come to the Tennessee location and conduct an investigation. Ms. Dangremond found evidence to support Plaintiff's sexual harassment and eventually terminated the employment of Plaintiff's Supervisor, Mr. Phelps, and Manager, Dennis (Last Name Unknown). Several remaining employees blamed Plaintiff for their terminations and made their opinions known to Plaintiff. From the time of Mr. Phelps' and Dennis's termination until Plaintiff's termination, Plaintiff was subjected to retaliatory actions from Defendant's employees. On several occasions, Plaintiff was counseled or written up for

absenteeism even when she had legitimate reasons for missing work such as illness. Plaintiff provided Defendant with notes from her physicians when she missed work. Additionally, Plaintiff did not receive the equipment maintenance assistance she requested in a timely manner which subsequently effected her work performance and production output. Plaintiff also was wrongfully counseled as a result of her having to use the bathroom on frequent occasions.

In both February and April 2008, Plaintiff complained to the Operations Supervisor, Kindell Manion, regarding fiberglass that she was getting in her eyes while operating certain machinery. Plaintiff explained to Mr. Manion that Defendant should provide proper safety equipment, such as protective eyewear. Defendant ignored Plaintiff's complaints.

On July 16, 2008, Plaintiff went to her physician for treatment of stomach pains. Her physician, while treating her for her stomach, recognized the condition of her eyes and examined them. Plaintiff's physician provided her with a note to take to Defendant which stated Plaintiff would need additional treatments as a result of the damage to her eyes. After presenting the note to Defendant, Plaintiff was asked to fill out Worker's Compensation paperwork and subjected to a urinalysis test. Plaintiff was also examined by another physician while she was performing the urinalysis testing, and this physician confirmed that fiberglass had damaged the corneas of her eyes. Plaintiff was asked to refrain from returning to work until Defendant had received the results of her urinalysis test.

On July 22, 2008, Defendant called Plaintiff back to work for a meeting and terminated her employment for "attempt to modify a drug test". Plaintiff asked Defendant to produce the results of the drug screen and Defendant refused to do so. Plaintiff refused to sign the exit interview form and left the premises. Plaintiff has filed suit and seeks protection under the Tennessee Human Rights Act, the Tennessee Public Protection Act and common law whistle

blower retaliation protection, and Tennessee common law. Plaintiff seeks lost wages and benefits and monetary compensation for the emotional and other damage she has suffered as a result of Defendant's sexual harassment and retaliatory actions. Plaintiff's request for damages is more fully outlined in her Complaint.

      **B.**    <u>**Defendant Prescotech Industries, Inc.**</u>

Prescotech hired Cummings on January 14, 2008. Cummings worked as a machine operator on the "tape drape" machine. This machine applies tape to the edges of sheets of fiberglass.

From January 22, 2008 to April 25, 2008, Cummings accumulated a total of ten unexcused absences (eight full day unexcused absences and four half day unexcused absences). Pursuant to its absenteeism policy[1], Prescotech issued Cummings a warning for excessive absenteeism at this time.

Cummings missed work again on July 16, 2008. This was Cummings' eleventh unexcused absence since January 22, 2008. As such, she was told she would be issued a warning for this absence pursuant to Prescotech's absenteeism policy.

After Cummings realized she would be written up for her absence, she told Prescotech that her absence was because she got fiberglass in her eye at work a week earlier. In other words, Cummings never mentioned getting fiberglass in her eye prior to being told she would be

---

[1] Prescotech has a "no fault" absenteeism policy. Under this policy, Prescotech allows each employee ten days of "absence from work" per year. "Absence from work" is generally defined as "any time a worker is scheduled to report for work and fails to report, regardless of the reason, or when a worker reports for work as scheduled and leaves work before the completion of his/her scheduled day." Prescotech does not include short term disability, Family Medical Leave Act, holidays, military leave, funeral leave, jury duty, vacation days, lay-off or period of voluntary lay-off requested by the employee and specifically pre-arranged by the Company, plant shutdown, lack of work, emergency plant closings and work related injury in the definition of "absence from work." Once an employee uses her ten days of absence from work, Prescotech generally administers disciplinary action as follows:

        10 Days       Verbal Warning
        11 Days       Written Warning
        12 Days       Two Day Suspension

issued a written warning for attendance. This was contrary to Prescotech's safety policy requiring employees to "report all accidents, or injuries, immediately to your supervisor, regardless of how slight you think they might be."

Nevertheless, when Cummings returned to work on July 17, 2008, Prescotech commenced the worker's compensation process for Cummings. Cummings completed an employee accident report and the Company contacted its medical clinic where Cummings would receive a medical evaluation and drug test.

While Cummings waited to go to the medical clinic, Cummings' co-worker, Gordon Jones, told Prescotech's Operations Supervisor Kindell Manion that Cummings was attempting to falsify the drug test she would receive at the clinic. Manion investigated by speaking to several of Cummings' co-workers. During the course of these discussions, Manion learned the following information:

- Cummings approached her co-worker, Noah Bodwell and asked him if his urine was clean. Noah said yes, it was, and Cummings asked Bodwell if he would urinate for her if she gave him a bottle.

- Cummings' co-worker, Ricky Garrett, witnessed Cummings take a rubber glove out of her pocket and ask another employee if the glove would hold urine.

- Cummings' co-worker, Donna Zunt, saw Cummings write a note to another employee in the breakroom. The employee looked at it and threw the note in the trash. After Cummings and the employee left the breakroom, Zunt retrieved the note from the trash. It said, "if you dilute your pee will it still be dirty?"

Manion and Human Resources Director Rita Dangremond terminated Cummings because, based on these statements from Cummings' co-workers, they determined Cummings attempted to falsify her drug test in violation of Prescotech policy.

---

13 Days        Termination

Prescotech terminated Cummings because several employees witnessed Cummings attempt to falsify a drug test. Cummings cannot show this legitimate, non-discriminatory reason for her termination is a pretext for discrimination or retaliation. Her termination had nothing to do with her complaints of sexual harassment or because of her alleged whistleblower activities.

Finally, with respect to Cummings allegations of hostile environment sexual harassment, Prescotech disputes that Cummings was subjected to conduct amounting to actionable harassment. Furthermore, even if Cummings was subjected to actionable harassment, Prescotech can demonstrate (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that Cummings unreasonably failed to take advantage of any preventive or corrective opportunities provided by Prescotech or to avoid harm otherwise as set forth in *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998).

## III. Identification of the Issues

All matters regarding liability and damages remain at issue in this litigation.

## IV. Schedule of Pretrial Proceedings

### A. Mandatory Initial Disclosures

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures on or before January 10, 2011.

### B. Other Pretrial Discovery Matters

Deadline for completion of written discovery and the depositions of all fact witnesses on or before August 1, 2011. All written discovery shall be served sufficiently in advance to allow for a response in accordance with the rules on or before the deadline for completion of discovery. The response time for all written discovery and requests for admissions is thirty (30) days. Local

Rule 33.01 is expanded to allow forty (40) interrogatories, including sub-parts. Discovery is not stayed during dispositive motions, unless ordered by the Court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger. The undersigned parties agree that discovery requests may be served via email and such discovery will be considered served on the day sent, unless the sender receives a message indicating the mail was undeliverable.

**V.     Dispositive Motions**

The parties shall file all dispositive motions on or before September 1, 2011. Any response shall be filed within twenty-one (21) days of the filing of the motion. Optional replies may be filed within fourteen (14) days of the filing of the response.

Briefs shall not exceed twenty (20) pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justifications for filing a partial summary judgment motion in terms of the overall economy of time and expense for the parties, counsel and the Court.

**VI.    Other Deadlines**

The parties shall file all Motions to Amend on or before July 1, 2011.

The plaintiff shall identify and disclose all expert witnesses and expert reports on or before June 1, 2011. The defendant shall identify and disclose all expert witnesses and reports on or before July 1, 2011.

The parties shall depose all expert witnesses on or before September 1, 2011.

The parties shall file a joint mediation report on or before July 15, 2011.

**VII.   Electronic Discovery**

The parties have reached agreements on how to conduct electronic discovery. Therefore, the default standard contained in Administrative Order 174 need not apply to this case.

## VIII. Estimated Trial Time

The parties expect the trial to last approximately 3-4 days.

It is so **ORDERED**.

**Aleta A. Trauger**
**United States District Court Judge**

**APPROVED FOR ENTRY:**

/s/ Tracey A. Kinslow
Tracey A. Kinslow, BPR #017098
DRESCHER & SHARP, P.C.
1720 West End Ave., Suite 300
Nashville, Tennessee 37203
(615) 425-7111
tkinslow@dsattorneys.com

*Attorney for Plaintiff*


/s/ Mekesha H. Montgomery
Mekesha H. Montgomery
Frost Brown Todd LLC
424 Church Street, Suite 1600
Nashville, Tennessee 37219-2308
(615) 251-5585
(615) 251- 5551 (fax)
mmontgomery@fbtlaw.com

*Attorney for Defendant*

94572vvv1